UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN G. KRUSE and MARIE KRUSE,

        Plaintiffs,                    Case No. 16-cv-10304-AJT-RSW

v.                                            Hon. Arthur J. Tarnow

REGINA CAELI, INC., a foreign
not for profit corporation; RICH BECKMAN,
PETER IDLER, DANIEL SAEGAERT,
STEVEN KONSIN, NORBERT MADUZIA,
AUGUSTINE TRAN and JOSHUA ALLEN,

        Defendants.

---

### MARIE KRUSE'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-SUPERVISED NOTICE PURSUANT TO 29 U.SC. §216(B) AND BRIEF IN SUPPORT

Marie Kruse, on behalf of herself and others similarly situated, states as follows for her Motion for Conditional Certification and Court-Supervised Notice Pursuant to 29 U.S.C. §219(b) and Brief in Support:

### MOTION FOR CONDITIONAL CERTIFICATION

1.    Marie Kruse was employed by Regina Caeli, Inc. ("RCA") as a lead tutor in RCA's local hybrid homeschooling program ("Detroit Program").

2.    In addition to tutoring students a few hours per week, RCA required Ms. Kruse to remain on-site for eight hours per day as an assistant tutor. She was only paid $25 for the sixteen hours per week she was required to work.

3. RCA disguised its patent minimum wage violation by contending that its employees, like Mrs. Kruse, were "paid" through a tuition discount. RCA referred to this as "Work Tuition."

4. Mrs. Kruse and the other persons employed through "Work Tuition" were employees under the FLSA. 29 U.S.C. §203(e)(1).

5. Mrs. Kruse and the other persons employed through "Work Tuition" were engaged in interstate commerce and were entitled to $7.25 per hour for time spent rendering services to RCA. 29 U.S.C. §206(a)(1)(C).

6. RCA therefore is liable to Mrs. Kruse and others in the "Work Tuition" program under 29 U.S.C. §216(b).

7. The "Work Tuition" program is a common policy or scheme applied to Mrs. Kruse and others, such that a collective action is warranted.

8. Therefore, Mrs. Kruse asks the Court to authorize her to issue a notice of this suit to all persons engaged by RCA in the "Work Tuition" program during the period February 26, 2013 - February 26, 2016 and to advise these persons of their right to join this suit to collect compensation for unpaid wages. *See* Proposed Notice, attached as **Exhibit A**.

WHEREFORE, there being no just cause otherwise, Marie Kruse respectfully asks the Court to enter an order conditionally certifying this matter for a collective action; directing RCA to provide Mrs. Kruse with the names, addresses

and email addresses of all persons engaged in the "Work Tuition" program; and directing that Mrs. Kruse may notify such persons of their right to join this suit.

## BRIEF IN SUPPORT

*Issue presented:*

Should this case be certified for a conditional collective action under the FLSA where there is evidence of a common policy applicable to Mrs. Kruse and others that violates the minimum wage provisions of the FLSA?

*Principal Authority:*

*Tony and Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 300-302 (1985)

*Mendel v. City of Gilbralter,* 727 F.3d 565, 573 (6th Cir. 2013)

*Comer v. Wal-mart Stores, Inc.,* 454 F.3d 544, 546- 547 (6th Cir. 2000)

RCA's "Work Tuition" program violates the minimum wage provisions of the FLSA in that RCA employs the participants but does not pay them at least $7.25 per hour for every hour worked. This policy was applied to Mrs. Kruse and others in the RCA Program. A conditional collective action should be certified in order to provide these workers with notice of this suit and an opportunity to join it in order to pursue and protect their rights to a minimum wage under the FLSA.

A. **Background.**

RCA is a Roman Catholic homeschooling tutoring service that provides its participants with tutoring two days a week, with the participating families homeschooling their children for the rest of the week. RCA charges tuition on a per-child basis but offers a tuition discount to families who agree to work for RCA, either as a tutor, an assistant tutor or as a childcare provider in RCA's nursery. *See* RCA Employee Handbook, attached as **Exhibit B** at pp. 11 – 12 (identifying "employee categories"). RCA now refers to the program as "Staff and Volunteer Membership," but, before this suit was filed and the minimum wage issues raised, RCA's website clearly referred to the program as "Staff Tuition Program." *Cf,* http://www.rcahybrid.org/Apply, attached as **Exhibit C** at page 2**,** and screen shots, attached as **Exhibit D**. In the pre-litigation websites, there was no mention of "volunteers" or "membership" in connection with the "Work Tuition" program; RCA only referenced a tuition discount for *staff*. *Id.*

Under the "Work Tuition" program, family members who serve as lead tutors must work 16 hours per week and are paid $25 per week. *See* Declaration of Marie Kruse ("Kruse Aff.") at ¶4, attached as **Exhibit E**. Those employees engaged as assistant tutors or childcare providers were not paid a monetary wage. However, lead tutor assistants and child care providers were all eligible for a discount in tuition.[1] *Id.* at ¶3; Declaration of Flora Burke ("Burke Aff.") at ¶3, attached as **Exhibit G**; Declaration of Julie Varchetti ("Varchetti Aff.") at ¶ 3, attached as **Exhibit H**. All employees in the "Work Tuition" program were required to sign employment contracts and agreed to be bound by RCA's employee handbook. *See* May 20, 2015 Email from RCA offering employment to J. Varchetti, attached as **Exhibit I**; Kruse Aff. at ¶ 5; Varchetti Aff. at ¶ 5; Burke Aff. at ¶ 5.

In addition, if employees in the "Work Tuition" program were late to their mandatory shifts, left early or had an unexcused absence, RCA would dock the employee's pay or charge a $50 or $75 penalty, depending on the infraction. *See* Handbook at p. 14; Burke Aff. at ¶6; Kruse Aff. at ¶ 6; Varchetti Aff. at ¶ 6. Employees in the "Work Tuition" program were also subject to discipline for rules infractions, evaluated to determine whether the employment relationship would be renewed, and subject to a dress code. *See* Handbook at pp. 22 – 25.

---

[1] At RCA programs in locations other than Detroit, these employees were paid wages for time spent working. *See* Facebook ads attached as **Exhibit F**.
1846504 v2

6

**B. Argument.**

In this Circuit, courts apply a "two stage" proceeding to determine whether an FLSA claim should proceed as a collective action. *Comer v. Wal-mart Stores, Inc.,* 454 F.3d 544, 546- 547 (6th Cir. 2000). In stage one – the "conditional certification" stage - the named plaintiff need only establish that a group of similarly situated employees exists. 29 U.S.C. §216(b); *Comer,* 454 F.3d at 546; *Shipes v. Amurcon,* Case No. 10-CV-14943, 2012 WL 995362 (E.D. Mich. March 23, 2012). The purpose of conditional certification is to notify employees of the suit's existence and to explain their right to participate. *Comer,* 454 F.3d at 546 – 547. Early notice also serves the FLSA's broad remedial purpose and §216(b)'s specific grant of collective rights to employees. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 583 (6th Cir. 2009) *over ruled in part on other grounds, Campbell-Ewald Co. v. Gomez,* 136 S.Ct. 663 (2016).

Because no substantive rights are determined at the first stage, the plaintiff's burden is slight. *Comer,* 454 F.3d at 547; *Morgan v. Family Dollar Stores, Inc.* 551 F.3d 1233, 1260 – 61 (11th Cir. 2008) (citing cases noting that standard is "lenient"). The burden consists solely of showing that the plaintiff's position is similar to other employees who were victims of "a common policy or plan that violated the law." *Comer,* 454 F.3d 546 – 57; *O'Brien,* 575 F.3d at 584-85.

Here, the common policy applicable to members of the potential collective action is treating its workers as volunteers in order to avoid the minimum wage provision of FLSA. Persons in the "Work Tuition" program are not "volunteers," but employees entitled to minimum wage under 29 U.S.C. §206(a).

### 1. The work tuition workers meet the FLSA's broad definition of "employee."

While the FLSA's definition of "employee" is circular in that it includes anyone "employed by an employer" [29 U.S.C. §203(e)(1)], the FLSA defines "employ" to mean, "to suffer or permit to work[.]" 29 U.S.C. §203(g). "Work" means "physical or mental exertion that is controlled by the employer." *Mendel v. City of Gilbralter,* 727 F.3d 565, 573 (6th Cir. 2013). This definition of "employee" is "strikingly broad" and "cover[s] some parties who might not qualify as such under a strict application of traditional agency law principles." *Mendel,* 727 F.3d at 569, citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323 (1992).

Here, the "Work Tuition" employees are required to be on RCA's site and provide services under RCA's hyper-controlled direction, at specific times and dressed in an RCA uniform. The work tuition employees sign contracts and are bound by an Employee Handbook that sets forth specific job requirements. They are subject to reprimands and fines for deviating from the agreed upon terms of

their employment, including the set hours of employment. Their "mental and physical" exertions are controlled by RCA when they are at work. As such, they are "employees" governed by the FLSA.

### 2. The work tuition employees are not volunteers.

The employees in the "Work Tuition" program are not volunteers under Sixth Circuit law. *Mendel, supra. See also Marie v. American Red Cross,* 771 F.3d 344 (6th Cir. 2014); *Bryson v. Middlefield Volunteer Fire Dep't.,* 656 F.3d 348 (6th Cir. 2011). To determine whether a person is an employee or volunteer, the Court should apply the "economic reality" test and consider "the circumstances of the whole activity." *Mendel,* 727 F.3d at 569, citations omitted. If those circumstances include "work in contemplation for compensation," the person is an employee and not a volunteer, even if the employee views herself as a volunteer. *Mendel,* 727 F.3d at 570, citing *Tony & Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 300 – 302 (1985). See also FLSA 2006-18 (June 1, 2006), attached as **Exhibit J.**

The parameters of the difference between an "employee" and "volunteer" were explored by the Sixth Circuit in a trio of recent cases. In *Mandel,* the court was asked to determine whether volunteer firefighters were FLSA "employees" who could be counted in order to determine whether the employer was subject to the Family Medical Leave Act. The court found that, although the firefighters did

not receive any employee benefits, worked when they wanted and not on a set schedule, the employer kept personnel files on them and paid them $15 per hour when the firefighters actually responded to a call. *Mandel,* 727 F.3d at 568. Because the firefighters agreed to work in "contemplation of compensation," they were not "volunteers" but "employees" under the FLSA.

The same issue was raised in *Byron v. Middlefield Volunteer Fire Department, Inc.,* 656 F.3d 348 (6th Cir. 2011) and *Marie v. American Red Cross,* 771 F.3d 344 (6th Cir. 2014) in the context of employment discrimination claims. The *Byron* court announced that remuneration was a factor in determining whether a person was a volunteer or an employee, but it was not an independent or dispositive factor.[2] *Byron,* 656 F.3d at 353. Rather, "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Byron,* 656 F.3d at 354. Expanding on *Byron,* the *Marie* court held that, while all factors are important, financial factors like remuneration are "particularly relevant" to determine whether a person was a volunteer or an employee. *Marie,* 771 F.3d at 354. Other relevant factors that distinguish volunteers from employees include

---

[2] The other relevant factors include the skill required for the work; whether the hired party provides necessary tools; the location of the work; the duration of the relationship; whether the hiring party has the right to assign additional projects; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work was part of the regular business of the hiring party; the provision of employee benefits; and the tax treatment of the hired party. *Bryson,* 6565 F.3d at 352, citations omitted.

1846504 v2

whether the employer required the employee to "operate on a fixed schedule or closely controlled their work[.]" *Marie,* 771 F.3d at 357. Finally, whether the termination of the employment status was economically "meaningful" for the employee is also a factor in determining whether the employee is a volunteer. *Marie,* 771 F.3d at 359.

Here, RCA dictated the Work Tuition employees' schedule and instituted financial penalties when the employee deviated from the set schedule. The employees did not have the right to dictate how they did the work, where they did the work or what work they would do; the tutors had to follow strict guidelines and were subject to audits or reviews. The assistants could be moved from job to job, depending on RCA's whim. The Work Tuition employees received 2 paid sick days per year and bereavement leave, a generous employee benefit given their part time status. Most importantly, the people in the Work Tuition program received remuneration in the form of a tuition discount.[3] In the case of Mrs. Kruse, that discount was worth thousands of dollars per year during the time that her seven children were enrolled. This was not a minor or "incidental" benefit, but the primary motivation for the services provided to RCA. *Alamo Foundation*, 471 U.S. at 301 (workers were "employees" of non-profit and not volunteers because

---

[3] If RCA were a "school" under the Internal Revenue Code, it could offer tuition discounts to employees, tax-free. 26 U.S.C. 117(d). However, the tuition reduction cannot be offered in exchange for services or it must be treated as income.

they exchanged services for room and board). Under *Mandel, Byron* and *Marie,* the workers enlisted in RCA's work tuition program were employees entitled to a minimum wage for all hours worked, and not volunteers.

### C. Conclusion.

In order for the Court to conditionally certify this matter as a collective action, Mrs. Kruse merely had to show that there were other employees affected by a common policy that may violate the FLSA. She has met her burden. This case should be conditionally certified; RCA directed to provide Mrs. Kruse with the names, addresses and email addresses of all people who participated in the work tuition program; and Mrs. Kruse allowed to mail the attached notice to all potential collective actions participants.

                MADDIN HAUSER ROTH
                & HELLER, P.C.

                */s/ Kathleen H. Klaus*
                Kathleen H. Klaus (P67207)
                *Attorneys for Plaintiffs*
                28400 Northwestern Hwy, 2nd Floor
                Southfield, Michigan 48034
                248-359-7520: kklaus@maddinhauser.com

## **CERTIFICATE OF SERVICE**

I Kathleen H. Klaus, being duly sworn, depose and state that on May 11, 2016, I electronically filed the foregoing papers with the Court using the ECF system which will send notification to all parties registered to receive electronic filings.

>  */s/  Kathleen H. Klaus*
> Maddin Hauser Roth & Heller, P.C.
> 28400 Northwestern Hwy, 2nd Floor
> Southfield, Michigan 48034
> 248-359-7520
> kklaus@maddinhauser.com
> P67207