UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN G. KRUSE, ET AL.,

               Plaintiffs,                       No. 16-10304

v.                                 District Judge Arthur J. Tarnow
                                 Magistrate Judge R. Steven Whalen

REGINA CAELI, INC., ET AL.,

               Defendants.

_____ /

## ORDER

Plaintiffs' motion to compel responses to discovery [Doc. #22] is GRANTED IN PART AND DENIED IN PART, as follows:[1]

### A.   Discovery Related to Purchase of Atlanta Property

Defendant Regina Caeli, Inc. ("RCA") is headquartered in Atlanta, Georgia. It purchased property in Atlanta, and constructed what Plaintiffs describe as an "extravagant building." In Interrogatory #12 and Document Request Nos. 4 and 5, Plaintiffs seek information regarding the funding and debt related to the Atlanta property. In Interrogatory No. 12, they request the identity of the person who provided bridge financing for the purchase of the property, and in Document Request No. 4, they seek documents related to the bridge loan. In Document Request No. 5, they request all documents related to the purchase of the RCA property, including minutes of board meetings where the purchase of the property was discussed. Plaintiffs contend that this information is relevant to Count II of their complaint, which alleges fraud.

---

[1] This discussion tracks the parties' Joint Statement of Unresolved Issues [Doc. #35].

The Plaintiffs reside in the Detroit area and engaged in RCA fundraising activities in the Detroit area. Part of their fraud claim rests on RCA's allegedly false statement that "[m]oney raised in the Detroit area would be dedicated to the Detroit program." *Amended Complaint* [Doc. #12], ¶ 38(c). As discussed below, Plaintiffs are entitled to information regarding money raised in the Detroit area, and information as to whether that money was earmarked or spent for Detroit area projects. However, their request for information regarding the bridge loan for the Atlanta property is, at best, only tangentially related to that inquiry, and their omnibus request for all documents related to the purchase of the Atlanta property is overly broad, given the Plaintiffs' claims. Either the money raised in Detroit was used in Detroit or it was not. At this point, the amount of money raised in Detroit and the monies spent in Detroit–the relevant inquiries–can be ascertained without the need to delve into the minutiae of a Georgia real estate transaction.[2]

If the discovery ordered herein should reveal a more compelling and direct nexus between money raised in Michigan and the purchase of the property in Atlanta, there might be a basis for a sufficiently narrow discovery request as to the latter in the future. At this time, however, the Plaintiffs' motion as to these requests is DENIED WITHOUT PREJUDICE.

## B.   Discovery Related to Funds Raised and Expended in Detroit

Without question, the information sought in Interrogatory Nos. 10, 11, 16, 17, and 18, and Document Request No. 14 is relevant to the Plaintiffs' fraud claim, as it relates to monies raised or spent in the Detroit area.[3] Document Request Nos. 12 and 13, however,

---

[2] It is an open question whether Plaintiffs have set forth RCA's allegedly false statement in ¶ 38(c) with the requisite specificity required by Fed.R.Civ.P. 9(b).

[3] I note that Defendants' boilerplate objections, each of which repeats the formulaic phrase that "the scope of this request is not proportional to the needs of this

-2-

are overly broad, in that they seek contribution and revenue information as to "each specific RCA location." These requests are relevant only to the extent that they are focused on RCA revenue information regarding the Detroit area location.

Therefore, Plaintiffs' motion as to these requests is GRANTED, with the proviso that Document Request Nos. 12 and 13 will be limited to information regarding RCA's Detroit area location.

### C.    Tax Treatment of Tutors

Plaintiff Marie Kruse was a tutor. In addition to her fraud claim, she brings claims under the Fair Labor Standards Act. The information requested in Document Request No. 9–the procedures or policies concerning RCA's tax treatment of tutors–is relevant to those claims, notwithstanding Defendants' boilerplate objection. *See* fn. 3, *supra*. Plaintiffs' motion is GRANTED as to this request.

### D.    Specific Expenditures

In Interrogatory Nos. 19, 20, and 21, Plaintiffs seek expenditures related to salaries and benefits received by certain RCA executives (Beckman, McDonough, and Ahern) who worked in Detroit, as well as management and general expenses related to Detroit. Paragraph 50(g) of Plaintiffs' amended complaint [Doc. #12] alleges that Defendants hid

---

case when considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Defendants offer no explanation as to why this is so.

With the advent of the 2015 amendments to Rule 26, the days of boilerplate objections are over. The Advisory Committee Notes instruct that the 2015 amendment is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional," and that a "party claiming undue burden or expense ordinarily has far better information–perhaps the only information–with respect to that part of the determination."

expenses, including "the salary paid to the executive director and other financial information...." Paragraph 50 raises a claim under the Michigan Consumer Protection Act ("MCPA"). Defendants argue that "RCA's executives do not work exclusively in Detroit" (a question of fact), and that they are not amenable to suit under the MCPA (a question of law that is not before me in a motion to dismiss). The Plaintiffs' motion is GRANTED as to this request.

### E.   Privileged Information

Although Defendants responded to Document Request Nos. 2, 3, and 7, they did so "without waiving" objections based on attorney-client and/or work product privilege. Plaintiffs complain that Defendants have not produced a privilege log.

As to any material that Defendants have produced, they have waived any privilege. Had they sought the protection of the attorney-client/work product privilege, their recourse was to withhold production and provide Plaintiffs with a privilege log.

To the extent that Defendants have in fact withheld documents to which they claim privilege, the will provide Plaintiffs with a privilege log within 14 days of the date of this Order.

### F.   Unproduced Documents

In Document Request Nos. 10 and 11, Plaintiffs seek RCA communications between RCA employees and both Susan Scarchelli and Janet Wojechowski concerning any member of the Kruse family, including Plaintiffs. For the most part, the documents at issue are emails. Defendants do not challenge the relevance of this information, but state that they "have enlisted the assistance of a forensic expert to collect emails from RCA's server and provide same to Defendants' counsel for review and production."

On June 21, 2016, I entered an order directing Defendants to "execute their own authorization/request to Google, Inc. for the requested emails and produce those emails to Plaintiffs" [Doc. #58].  This should take care of the issue, so the Plaintiffs' motion is DENIED AS MOOT as to these requests. However, if my previous order does not resolve the requests, it is DENIED WITHOUT PREJUDICE.

All discovery ordered to be produced will be provided to Plaintiffs within 14 days of the date of this Order.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: June 30, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 30, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager